UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MANUELA HERNANDEZ, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>                Defendants. | Case No.  19-cv-07888-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

On December 8, 2018, Carlos Aguilar committed suicide while an inmate at the Santa Clara County Jail.  His mother, Plaintiff Manuela Hernandez, has filed suit against the County of Santa Clara and several County employees, alleging that they failed to properly classify Aguilar as a suicide risk and to properly monitor or treat him for that risk.  Defendants' motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is presently before the Court.  The Court finds this matter suitable for decision on the papers and, for the ensuing reasons, GRANTS Defendants' motion WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

### I.    BACKGROUND

The following facts derive from Plaintiff's allegations in the operative First Amended Complaint ("FAC"), ECF 19 ("FAC"), which generally must be treated as true at the pleading stage.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

The decedent, Carlos Aguilar, was admitted to the Elmwood Correctional Facility of the

United States District Court
Northern District of California

Santa Clara County Jail on July 25, 2019 as a pre-trial detainee.  FAC at 5.[1]  Plaintiff alleges that at the time of admission, "Aguilar had suicidal ideations," but unnamed County intake officers did not classify Aguilar as a suicide risk.  *Id.*  Plaintiff's claims thus derive in part from the County's failure to recognize that Aguilar was a high suicide risk and implement the corresponding protocols and treatment. *See id.* at 6-7.

Plaintiff further alleges that officers at the jail failed to properly monitor Aguilar on the day of his suicide.  Specifically, the FAC states that Sheriff Deputies Alan Tse and Tambini (his first name is unknown) were assigned to supervise Aguilar's housing unit on December 2, 2018. FAC at 4, 5.  At 6:30 p.m., Deputy Tambini performed a welfare check on Aguilar, but allegedly "failed to notice signs pointing to Aguilar's suicidal intent." *Id.* at 5.  Then, at 7:15 p.m., Deputies Tse and Tambini "allowed inmates free time outside of their cells," but Aguilar did not partake. *Id.*  Finally, at 8:00 p.m., Deputy Tambini performed another welfare check on Aguilar and found him "hanging by a towel from the top bunk in his cell." *Id.* at 6.  Aguilar was apparently determined to have died by suicide. *Id.*

In December 2019, Aguilar's mother, Manuela Hernandez, filed the instant action on behalf of herself and as guardian ad litem for Aguilar's two minor children.  Dkt. No. 1.  The parties stipulated to Plaintiff's filing of the operative FAC, which she did on February 12, 2020. Dkt. Nos. 16, 19.  The FAC contains eight Counts: (1) a claim under 42 U.S.C. § 1983 for violation of the decedent's 14th Amendment rights; (2) a claim under 42 U.S.C. § 1983 for violation of the decedent's and the Plaintiff's 14th Amendment rights, styled as a "wrongful death" claim; (3) a claim under 42 U.S.C. § 1983 for violation of the decedent's 14th Amendment rights, styled as a "survival action"; (4) a claim under 42 U.S.C. § 1983 for violation of Plaintiff's right to familial relationship; (5) a claim for negligence, brought under California Government Code §§ 815.2, 820; (6) a claim for failure to summon medical care in violation of California Government Code § 845.6; (7) a claim for negligence, styled as a "wrongful death" action under

---

[1] Because the paragraphs in the FAC are misnumbered, the Court will identify pincites by page number.

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS

California Code of Civil Procedure §§ 377.60, 377.61; and (8) a common law claim for intentional

inflection of emotional distress.  Counts 1, 2, and 5 are brought against the County of Santa Clara

("County"); Laurie Smith, Sheriff for the County of Santa Clara; Sheriff Deputy Tambini (first

name unknown); Sheriff Deputy Alan Tse; and 50 Doe employees of the County of Santa Clara

Sheriff's Department (collectively, "Defendants").  *See* FAC at 3-4.  Counts 3, 4, 6, 7, and 8 are

brought against all Defendants other than Sheriff Laurie Smith.

On March 3, 2020, Defendants moved to dismiss the entire FAC under Federal Rule of

Civil Procedure 12(b)(6).  Dkt. No. 21 ("Mot.").  The motion has been fully briefed, Dkt. Nos. 25

("Opp."), 26 ("Reply"), and is now ripe for the Court's ruling.

## II.    MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure Rule 8(a)(2) requires a complaint to include "a short and

plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails

to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Put

another way, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"

*Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v.

Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim

to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but

it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal

quotation marks omitted).

In evaluating the sufficiency of a complaint, the court must "accept factual allegations in

the complaint as true and construe the pleadings in the light most favorable to the nonmoving

party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  At the

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

same time, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

If the court concludes that a motion to dismiss should be granted, the court must consider whether to grant leave to amend, "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations omitted). Federal Rule of Civil Procedure 15(a) instructs courts to "freely give leave when justice so requires"; the Ninth Circuit has, moreover, emphasized that "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations omitted). Accordingly, the court must grant leave to amend unless it is shown that "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" justifies denial. *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Where, as here, the court has not previously evaluated the sufficiency of a plaintiff's pleading, the court generally allows amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1127 (internal quotations omitted).

## III.    DISCUSSION

As noted above, Defendants move to dismiss all eight claims in the FAC. Below, the Court first considers the sufficiency of Plaintiffs' allegations as to its § 1983 claims (Counts 1-4) and then does the same for its state law claims (Counts 5-8).

### A.    Claims under 42 U.S.C. § 1983

Counts 1-4 are brought under 42 U.S.C. § 1983, which provides a private right of action against constitutional violations made under color of state law. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under

1   the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

2        At the outset, the Court notes that there appears to be some overlap across the four counts;

3   neither the FAC nor Plaintiff's Opposition brief makes clear precisely how the counts differ or

4   relate to one another.

5        For instance, although Count 1 is labeled as a "deliberate indifference" claim, all four

6   counts allege that Defendants were deliberately indifferent to Aguilar's risk of suicide and need

7   for psychiatric care.  *See* FAC at 6-9.  In addition, Count 2 is styled as a "wrongful death" claim

8   and Count 3 is styled as a "survival action," *id.* at 7-8, but "there is no 'wrongful death' claim

9   under § 1983," *Murphy v. Cty. of Mendocino*, No. 15-CV-04624-NJV, 2016 WL 794458, at *2

10  (N.D. Cal. Mar. 1, 2016); *see also Herd v. Cty. of San Bernardino*, 311 F. Supp. 3d 1157, 1164

11  (C.D. Cal. 2018); *Estate of Lopez ex rel. Lopez v. Torres*, 105 F. Supp. 3d 1148, 1159 (S.D. Cal.

12  2015).[2]  To the extent Count 2 is based on Plaintiff's own 14th Amendment "right to familial

13  relationship," FAC at 7, it appears duplicative of Count 4, which is entitled "Violations of

14  Plaintiff's Civil Right to a Familial Relationship." *Id.* at 9.

15       In any event, the Court discerns two distinct claims for relief across Counts 1-4.  First,

16  Plaintiff asserts that Defendants infringed Aguilar's substantive due process rights under the 14th

17  Amendment by their failure to protect and provide adequate medical care to Aguilar.  That claim

18  is based on the unnamed officers' failure to classify Aguilar as a suicide risk at intake and on

19  Defendants Tse and Tambini's failure to notice or investigate signs of Aguilar's suicide risk on the

20  day of the suicide.  Second, Plaintiff claims that Defendants' failure to prevent Aguilar's suicide

21  interfered with Plaintiff's right to familial association, which is a substantive due process right

22

23

24  [2] Although courts have not always been precise in their use of the term "wrongful death," such
    actions are ones in which the decedent's dependents seek damages "for personal injuries they have
    suffered as a result of a wrongful death." *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d

25  426, 429 (9th Cir. 1994).  In a survival action, by contrast, "decedent's estate may recover
    damages on behalf of the decedent for injuries that the decedent has sustained," *id.*; these are

26  permitted under § 1983 "if the relevant state's law authorizes a survival action." *Moreland v. Las
    Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998); *see also Hayes v. Cty. of San*

27  *Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013).  Here, Defendants do not challenge Plaintiff
    Hernandez's standing to assert a survival action as Aguilar's successor in interest.

28  Case No.: 19-cv-07888-EJD
    ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

under the 14th Amendment.  For the reasons below, the Court does not believe Plaintiff has adequately alleged either claim.  The Court also separately addresses Plaintiff's inclusion of the County and Sheriff Laurie Smith as defendants, which has not been justified.

### i.   Violation of Aguilar's Substantive Due Process Right

A pretrial detainee has a substantive due process right under the 14th Amendment to be protected from harm during custody.  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016).  As relevant here, that right may be violated by a correctional facility's failure to adequately address the detainee's medical needs, including an imminent risk of suicide.  *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019); *accord Estate of Vela v. Cty. of Monterey*, No. 16-CV-02375-BLF, 2018 WL 4076317, at *3 (N.D. Cal. Aug. 27, 2018).  In this Circuit, such claims are "evaluated under an objective deliberate indifference standard." *Vasquez v. Cty. of Santa Clara*, 803 Fed. App'x 100, 102 (9th Cir. 2020) (quoting *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-1125 (9th Cir. 2018)).  Specifically, "the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125.  With regard to the third element, the Ninth Circuit has explained that a plaintiff must "prove more than negligence but less than subjective intent— something akin to reckless disregard." *Id.*

Applying this standard to the facts of this case, the FAC alleges that Defendants made two "intentional decisions": (1) the decision at intake by certain unnamed corrections officers not to classify Aguilar as a high suicide risk and provide him with appropriate medical care and supervision; and (2) the decision on December 2, 2018 by Deputies Tse and Tambini not to

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS

investigate Aguilar's signs of suicide and provide him with appropriate medical care and supervision.  To make out her claim of a constitutional violation, Plaintiff must show that Defendants made these decisions with "reckless disregard" of an imminent risk that Aguilar would commit suicide.  *NeSmith v. Olsen*, No. 19-55457, 2020 WL 1847628, at *1 (9th Cir. Apr. 13, 2020) (unpublished).  That is, the FAC must contain allegations from which it could be plausibly inferred that a reasonable officer "would have appreciated" the "high degree" of suicide risk that Aguilar presented at the time of each decision.  *Gordon*, 888 F.3d at 1125.

For instance, in *NeSmith v. Olsen*, "the Deputies observed a rope hanging from NeSmith's light on the night before his suicide."  2020 WL 1847628, at *2.  "Under those circumstances, the rope presented a clear warning that NeSmith presented an imminent suicide risk."  *Id.*  Similar facts—i.e., officials' knowledge of a threat of suicide or suicide attempt—have supported liability for jail officials' failure to take suicide precautions in *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011), and in *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010).  On the other hand, in *Vasquez v. County of Santa Clara*, the Ninth Circuit affirmed the district court's judgement in defendant's favor where "the last mental health professional to evaluate Lozano"— the decedent—"reviewed Lozano's medical records, consulted with the officer on duty, observed and conversed with Lozano, and, in his professional opinion, determined that Lozano was not suicidal."  803 Fed. App'x at 102.

In this case, Plaintiff contends that Defendants "knew or should have known that Aguilar was at high risk [of suicide] and/or intended on harming himself."  FAC at 6.  But the FAC contains no factual allegations supporting that assertion.  As to the initial intake decision, Plaintiff alleges that "Aguilar had suicidal ideations."  *Id.* at 5.  Assuming, as the Court must, that Aguilar did in fact have suicidal ideations, there is no indication that County intake officers were aware of those suicidal ideations.  Plaintiff does not allege, for example, that Aguilar disclosed his ideations to the intake officers, who then ignored them.  Nor does Plaintiff allege that the unnamed officers failed to discover Aguilar's suicidal ideations because they did not conduct a proper intake

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   interview.  Without allegations of this sort, there is no basis for inferring that a reasonable officer

2   would have recognized that Aguilar was a high risk of suicide at the time of intake.

3           Plaintiff's allegations regarding Deputies Tse and Tambini's inaction on the day of

4   Aguilar's suicide likewise fall short.  The FAC alleges generally that "Aguilar showed signs of

5   suicidality" that day.  The only alleged "sign" the FAC identifies, however, is that Aguilar "sat

6   anxiously on his bunk and did not participate in free time."  FAC at 6-7.  The FAC provides no

7   context for the allegation: It does not reveal what indicated that he was "anxious"; it also does not

8   allege that his lack of participation in free time was out of the ordinary.  Meanwhile, the FAC

9   states that Deputies Tse and Tambini were not familiar with Aguilar prior to their assignment on

10  December 2, 2018.  Under these circumstances, the mere fact that Aguilar sat on his bunk instead

11  of participating in free time does not give rise to an inference that he was at an imminent risk of

12  suicide—much less that Deputies Tse and Tambini were deliberately indifferent to that risk.

13          Thus, even under the liberal pleading standard set forth by *Twombly* and *Iqbal*—under

14  which Plaintiff is entitled to the benefit all inferences—the allegations in the FAC are insufficient

15  to state a claim that Aguilar's due process rights were violated.  Accordingly, the Court GRANTS

16  Defendants' motion to dismiss the claim; that dismissal is with LEAVE TO AMEND, as Plaintiff

17  may be able to supplement her claim with additional factual allegations.

18              **ii.    Violation of Plaintiff's Right to Familial Relationship**

19          Next, the Court turns to Plaintiff's claim for violation of the right to familial relationship.

20  The Court assumes that Plaintiff asserts this claim on her own behalf and on behalf of Aguilar's

21  minor children, though the FAC is not explicit on this point.

22          Parents and children have "fundamental liberty interest" in "the companionship and society

23  of their child or parent" as a component of their substantive due process rights under the 14th

24  Amendment.  *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013);

25  *see also Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).  This right to familial

26  association is further supported by the 1st Amendment's guarantee of freedom of association.  *See*

27  *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018); *Lee*, 250 F.3d at 685.  Of relevance here, the

28  Case No.: 19-cv-07888-EJD
    ORDER GRANTING MOTION TO DISMISS
                                    8

1    Ninth Circuit has recognized that official conduct that deprives a parent or child of the

2    companionship and society of a decedent may constitute a constitutional violation. *Lemire*, 726

3    F.3d at 1075.  The official conduct must "shock the conscience," which is a more demanding

4    standard than deliberate indifference.  *Id.*  Specifically, the Ninth Circuit has said that deliberately

5    indifferent conduct will generally "shock the conscience" if the defendant "had time to deliberate

6    before acting or failing to act in a deliberately indifferent manner." *Id.*

7        In this case, then, the deliberate indifference of County officials to Aguilar's medical needs

8    could rise to a claim for interference with familial association if such indifference "rise[s] to the

9    conscience-shocking level." *Id.*  But as the Court just held, the FAC fails to clear the lower bar of

10   adequately alleging deliberate indifference; *a fortiori*, the FAC does not allege any official

11   conduct that "shocks the conscience."  Accordingly, the Court must also DISMISS Plaintiff's

12   claim for violations of the right to familial association.  Again, leave to amend is appropriate

13   because Plaintiff may be able to allege further facts that support her claim.

14           ### iii.    Liability of the County and Sheriff Laurie Smith

15       An additional wrinkle remains: Plaintiff does not only bring Counts 1-4 against the

16   individual officers who allegedly interacted with Aguilar, i.e., the Doe intake officers and

17   Deputies Tse and Tambini; Plaintiff also sues the County and, as to Counts 1 and 2, Sheriff Laurie

18   Smith.  It is well-established that "there is no respondeat superior liability under § 1983."

19   *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1151 (9th Cir. 2011) (citing *Monell v.*

20   *Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  As explained below, even if

21   Plaintiff had sufficiently pleaded the above constitutional violations by the individual officers,

22   Plaintiff has not established liability on the part of the County or Sheriff Smith.

23       First, as a local government entity, the County may be liable under § 1983 only if a "policy

24   or custom" by the County contributed to the particular constitutional violation at issue.  *Castro v.*

25   *Cty. of Los Angeles*, 833 F.3d 1060, 1075-1076 (9th Cir. 2016) (citing *Monell*, 436 U.S. at 694).

26   Specifically, the plaintiff must satisfy a "two-part test": "(1) there must be a 'direct causal link

27   between a municipal policy or custom and the alleged constitutional deprivation,' and (2) the

28   Case No.: 19-cv-07888-EJD
     ORDER GRANTING MOTION TO DISMISS

*United States District Court*
*Northern District of California*

custom or policy must have been 'adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants.'" *Vasquez*, 803 Fed. App'x at 102–03 (quoting *Castro*, 833 F.3d at 1075-76).  Plaintiff has not done so in this case.  Plaintiff has simply included the County as a defendant without identifying a specific County policy or custom—or lack of policy or custom— that allegedly caused Aguilar's death.  *See id.*  Consequently, Plaintiff has not stated a § 1983 claim against the County.

Nor has Plaintiff adequately alleged liability on the part of Sheriff Smith.  A "supervisory official" is liable under § 1983 only if "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotations omitted).  "The requisite causal connection can be established by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id.* (internal quotations and alterations omitted).  Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Keates*, 883 F.3d at 1242–43.

The only allegation in the FAC that speaks to Sheriff Smith's potential liability is that Smith "was a final decision make[r] for the sheriff department as she could make the final decisions about discipline, training, supervision and development of constitutional policing."  FAC at 3-4.  Nothing in the FAC describes the specific decision or decisions that Sheriff Smith allegedly made and that may have plausibly contributed to Aguilar's death.  The bare allegation that Sheriff Smith exercised general supervision of the jail does not suffice to establish a causal connection between any alleged unconstitutional conduct by her subordinates.  *See Keates*, 83 F.3d at 1243.

Accordingly, the Court must dismiss Plaintiff's § 1983 claims against the County and

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Sheriff Smith for the additional reason that the FAC does not contain allegations connecting these

2    defendants to the asserted constitutional violations.  As before, the Court will grant Plaintiff

3    LEAVE TO AMEND to cure this deficiency.

4         **B.    State Law Claims**

5         Defendants also move to dismiss Counts 5-8, which are California state law claims based

6    on the same facts as the § 1983 claims.  The Court first addresses the negligence claims together

7    (Counts 5 and 7) before turning to the claim for failure to summon medical care (Count 6) and

8    then to the claim for intentional infliction of emotional distress (Count 8).

9              **i.    General Negligence Claims**

10        As previously noted, Counts 5 and 7 allege that Defendants negligently failed to address

11   Aguilar's suicidality.  The only apparent difference between the counts is that Count 7 is explicitly

12   denoted a wrongful death action under California Code of Civil Procedure § 377.60, whereas

13   Count 5 is a generic negligence action; both assert the same factual claim for relief.

14        At the outset, the Court observes that Counts 5 and 7 are brought against the County.  As

15   Defendants point out, California Government Code § 844.6 makes public entities immune from

16   liability for an injury to "any prisoner," which includes jail detainees, *see id.* § 844.  *See*

17   *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1069 (2013); *Resendiz v. Cty. of*

18   *Monterey*, No. 14-CV-05495-LHK, 2015 WL 3988495, at *6 (N.D. Cal. June 30, 2015).

19   Moreover, such immunity extends to wrongful death actions as well as survival action.  *Lowman*

20   *v. Cty. of Los Angeles*, 127 Cal. App. 3d 613, 615 (Ct. App. 1982).  There are statutory exceptions

21   to § 844.6, one of which is failure to summon medical care under California Government Code

22   § 845.6; that exception is the basis for Count 6.  Plaintiff does not, however, point to any other

23   applicable exception.  *See* Opp. at 8-9.  Accordingly, the Court DISMISSES Counts 5 and 7

24   against the County.  Though it is not clear that Plaintiff will be able to plead a negligence claim

25   against the County that is not encompassed by § 844.6, the Court will GRANT LEAVE TO

26   AMEND to allow Plaintiff an opportunity to develop the claim.

27        As to the individual Defendants—Sheriff Smith, Deputies Tse and Tambini, and Doe

28   Case No.: 19-cv-07888-EJD
     ORDER GRANTING MOTION TO DISMISS
                                    11

United States District Court
Northern District of California

1    County employees—Plaintiff asserts her negligence claims under California Government Code

2    § 820, which provides that "a public employee is liable for injury caused by his act or omission to

3    the same extent as a private person."  Cal. Gov. Code § 820(a).  The elements of a negligence

4    claim under California law are (1) that defendant owed a duty of care, (2) that he breached that

5    duty, and (3) that the breach was the proximate or legal cause of the resulting injury.  *Lawson v.*

6    *Superior Court*, 180 Cal. App. 4th 1372, 1389 (2010).

7          The first element is easily satisfied: "There is a special relationship between jailer and

8    prisoner, imposing on the former a duty of care to the latter."  *Giraldo v. Dep't of Corr. & Rehab.*,

9    168 Cal. App. 4th 231, 250 (2008) (omitting quotation marks) (cited with approval by *Winger v.*

10   *City of Garden Grove*, No. 18-56118, 2020 WL 1288459, at *1 (9th Cir. Mar. 18, 2020)).

11   California law imposes certain limits upon the scope of that duty, however.  Of relevance here,

12   California Government Code § 855.8 "grants public entities and public employees specific

13   immunity for injury resulting, *inter alia*, 'from diagnosing or failing to diagnose that a person is

14   afflicted with mental illness' and 'from failing to prescribe for mental illness.'"  *Johnson v. Cty. of*

15   *Los Angeles*, 143 Cal. App. 3d 298, 316 (1983) (quoting Cal. Gov. Code § 855.8(a)).

16   Furthermore, "as a matter of law a sheriff does not have the authority to make the final

17   determination of diagnosing that a person is, or is not, afflicted with mental illness.  Nor can a

18   sheriff 'prescribe for mental illness.'"  *Id.*  Rather, "such determinations are properly made by

19   physicians and other persons trained in the healing arts."  *Id.*

20         Pursuant to the foregoing, the Sheriff and her deputies did not have a duty to recognize that

21   Aguilar was suicidal, either at intake or on December 2, 2018.  *Accord Servantez v. Cty. of*

22   *Sacramento*, No. 2:07-CV-0661 FCD JFM, 2009 WL 2153812, at *23 (E.D. Cal. July 16, 2009).

23   Plaintiff cannot, therefore, make out a negligence claim based on the Doe intake officers' failure

24   to classify Aguilar as a suicide risk or Deputies Tse and Tambini's failure to perceive that Aguilar

25   intended to commit suicide in hours leading up to his death.

26         Even putting aside any effect of § 855.8 on Plaintiff's claim, the FAC does not plausibly

27   allege that Defendants negligently failed to act with reasonable care.  Plaintiff argues that

28   Case No.: 19-cv-07888-EJD
     ORDER GRANTING MOTION TO DISMISS

Defendants' failure to detect Aguilar's suicidality amounts to a breach in that Defendants (1) did not "address[] Aguilar's suicidality and summon[] medical care for Aguilar, including referring him to a psychologist, or transferring him to a mental health facility," FAC at 10, (2) "failed to properly monitor Aguilar," *id.*, and (3) placed Aguilar in a cell "with means to commit suicide by hanging readily available to him," Opp. at 10, *see also* FAC at 11.

The first theory collapses with Count 6, the claim for failure to summon medical care; as such, it is governed by California Government Code § 845.6 and fails for the reasons discussed at Part III.B.ii.

As for the claim that Defendants "failed to properly monitor Aguilar," the FAC contains no allegations explaining how Defendants' monitoring was inadequate. On the contrary, the FAC states that Deputies Tse and Tambini conducted welfare checks on Aguilar on the day of his death, and there is no suggestion that these checks were incompetently performed. Meanwhile, Plaintiff does not identify other measures that Defendants should have taken.

Plaintiff's allegation that Defendants made the "means to commit suicide by hanging readily available to" Aguilar is likewise unsupported. Although the FAC states that Aguilar committed suicide using a towel, it does not include allegations as to how or when Aguilar obtained the towel. Without such facts, the Court cannot reasonably infer that Defendants— specifically, Deputies Tse and Tambini—provided the towel to him under circumstances that made the act negligent.

The Court therefore finds that Plaintiff's negligence claim based on the individual Defendants' failure to address Aguilar's suicidality is insufficiently pled and, at least to some extent, barred by California Government Code § 855.8.

All that remains is Plaintiff's allegation that Sheriff Smith "fail[ed] to properly supervise and train Defendant Deputy Tse, Deputy Tambini, and Does 1-50." FAC at 10. This allegation is purely conclusory: The FAC is devoid of any allegations regarding the training or supervision that Sheriff Smith provided or identifying gaps in her training or supervision. Thus, Plaintiff's theory of negligent supervision and training must also be rejected as insufficiently pleaded.

United States District Court
Northern District of California

1    Counts 5 and 7 are, therefore, DISMISSED WITH LEAVE TO AMEND.

2        **ii.    Failure to Summon Medical Care under California Government Code § 845.6**

3    Count 6 alleges that Defendants violated California Government Code § 845.6 by their

4    failure to summon medical care.  Section 845.6 provides, in pertinent part:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

To state a claim under § 845.6, a plaintiff must establish three elements: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care."  *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006) (citing *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993)).  In addition, California courts have limited liability under § 845.6 to "serious and obvious medical conditions requiring immediate care."  *Watson*, 21 Cal. App. 4th at 841; *accord George v. Sonoma Cty. Sheriff's Dep't*, No. C-08-02675 EDL, 2010 WL 4117381, at *7 (N.D. Cal. Oct. 19, 2010).

Defendants do not dispute that "[a] suicidal state is a serious and obvious medical condition requiring immediate care."  *Johnson v. Baca*, No. CV1304496MMMAJWX, 2014 WL 12558252, at *22 (C.D. Cal. Oct. 9, 2014); *see* Mot. at 11.  But again, the Court has already found that the FAC does not contain factual allegations showing that any County employee "knew or had reason to know" of Aguilar's risk of suicide either at intake or on the day of his death.  *See* Part III.A.i.  This defect is fatal to Plaintiff's § 845.6 claim, just as it was to Plaintiff's § 1983 claims.  Defendants' motion to dismiss Count 6 is, therefore, GRANTED WITH LEAVE TO AMEND.

        **iii.    Intentional Infliction of Emotional Distress**

Count 8, Plaintiff's final claim, alleges intentional infliction of emotional distress.  *See* Opp. at 11.  "The elements of a prima facie case of intentional infliction of emotional distress in California are: '(1) extreme and outrageous conduct by the defendant with the intention of

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS
14

United States District Court
Northern District of California

1    causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

2    suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

3    emotional distress by the defendant's outrageous conduct.'"  *Corales v. Bennett*, 567 F.3d 554,

4    571 (9th Cir. 2009) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982)).

5            In their motion, Defendants argue that neither Hernandez nor Aguilar's children may assert

6    a claim for intentional infliction of emotional distress because the conduct at issue "was aimed at

7    Aguilar, not his mother or children."  Mot. at 11.  Plaintiff does not dispute that that "claims for

8    intentional infliction of emotional distress are meant to compensate the victim to whom the

9    egregious conduct is directed," Opp. at 11 (citing *Christensen v. Superior Court*, 54 Cal. 3d 868,

10   905 (1991)); she also does not contend that she or Aguilar's children qualify.  Instead, Plaintiff

11   emphasizes that Count 8 is a survival action, which she asserts as successor in interest to Aguilar.

12   Opp. at 11.

13           As Defendants correctly point out, however, the California Code of Civil Procedure

14   provides that in an action by a decedent's successor in interest, "the damages recoverable . . . *do*

15   *not include damages for pain, suffering, or disfigurement*."  Cal. Civ. Proc. Code § 377.34

16   (emphasis added).  The Ninth Circuit and California courts alike have interpreted this provision as

17   "clearly preclud[ing] recovery of emotional distress damages" through a survival action.  *Martin v.*

18   *Cal. Dept. of Veterans Affairs*, 560 F.3d 1042, 1050–51 (9th Cir. 2009) (citing *Berkley v. Dowds*,

19   152 Cal. App. 4th 518, 530 (2007)).  Section 377.34 thus precludes as a matter of law any claim

20   by a successor interest in which the "the only injury alleged . . . is emotional distress."  *Berkley*,

21   152 Cal. App. 4th at 530; *see also Martin*, 560 F.3d at 1051 (affirming judgment as a matter of

22   law for defendants); *Bresaz v. Cty. of Santa Clara*, No. 14-CV-03868-LHK, 2015 WL 1230316, at

23   *11 (N.D. Cal. Mar. 17, 2015) (dismissing intentional and negligent infliction of emotional

24   distress claims with prejudice).

25           Thus, Plaintiff cannot assert a claim for intentional infliction of emotional distress on

26   behalf of Aguilar and the Court must GRANT Defendants' motion to dismiss Count 8.

27   Furthermore, because Plaintiff could not possibly plead around California Code of Civil Procedure

28   Case No.: 19-cv-07888-EJD
     ORDER GRANTING MOTION TO DISMISS
                                                   15

*United States District Court*
*Northern District of California*

§ 377.34, leave to amend would be futile; the Court therefore dismisses Count 8 WITHOUT
LEAVE TO AMEND.  *See Lopez*, 203 F.3d at 1127; *accord Bresaz*, 2015 WL 1230316, at *11.

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to dismiss WITH LEAVE TO
AMEND as to Counts 1-7 and WITHOUT LEAVE TO AMEND as to Count 8.  Any amended
complaint must be filed by **June 26, 2020.**


**IT IS SO ORDERED.**


Dated: June 11, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 19-cv-07888-EJD
ORDER GRANTING MOTION TO DISMISS
16